UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ALONZO PINA,<br><br>        Petitioner,<br><br>v.<br><br>MATTHEW CATE,<br><br>        Respondent. | Civil No. 09cv1729-L(POR)<br><br>**ORDER (1) ADOPTING REPORT AND RECOMMENDATION; (2) DENYING PETITION; AND (3) DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner Jose Alonzo Pina, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2254 ("Petition"). Petitioner was convicted of second degree murder under California Penal Code Section 187(a). (Lodgment 1 at 210 (Abstract of Judgment).) He claims his federal constitutional rights were violated because the evidence presented at trial was insufficient to support the conviction and the trial court improperly instructed the jury on aiding and abetting, reasonable doubt and circumstantial evidence.

The Petition was referred to United States Magistrate Judge Louisa S. Porter for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Civil Local Rule 72.1(d). The Magistrate Judge issued a Report and Recommendation, recommending the Petition be denied. Petitioner objected. Respondent did not file a response. For the reasons which follow, Petitioner's objections are overruled, the Report and Recommendation is adopted, and the Petition is **DENIED**.

In reviewing a magistrate judge's report and recommendation, the district court "shall make a *de novo* determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under this statute, "the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made, but not otherwise*." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.) (*en banc*) (emphasis in original); *see Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1225-26 & n.5 (D. Ariz. 2003) (applying *Reyna-Tapia* to habeas review).

First, Petitioner objects to the recommendation insofar as it found that the state court decision on the insufficiency of the evidence claim was not unreasonable. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts apply a deferential standard of review of state court decisions. The question presented by the Petition under AEDPA, 28 U.S.C. § 2254(d)(1), is whether the state court determination "involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States." *See Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).

"As a matter of federal constitutional law, the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Juan H.*, 408 F.3d at 1274. The clearly established federal law on this issue is *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), under which "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Under AEDPA, the standard established in *Jackson* is applied with an additional layer of deference to the state court rulings. *Juan H.*, 408 F.3d at 1274. Accordingly, "[c]ases of constitutional insufficiency of evidence where the writ must issue even after consideration of the double level of deference will necessarily be rare, confined to extraordinary cases." *Smith v. Mitchell*, 624 F.3d 1235, 1239 (9th Cir. 2010).

The evidence is discussed in detail in the opinion of the California Court of Appeal, *People v. Pina*, 2008 WL 755067 (Cal. App. 4th Dist. 2008), and is only briefly summarized

herein. Petitioner and the victim Jose Cardona, Sr. lived with Petitioner's mother, who was Mr. Cardona's girlfriend. On the morning of the crime, Petitioner was in an argument with Mr. Cardona's son Jose[1] because Jose bumped into Petitioner. Later Mr. Cardona and Petitioner's mother joined the argument as well. Apparently arguments between Mr. Cardona and Petitioner's mother were not uncommon and, although they were loud, they were not violent. Petitioner and his mother were yelling at Mr. Cardona and Jose to move out. Petitioner's mother told Mr. Cardona that he would leave "one way or another." Petitioner's brother Alfredo[2] was called from work to assist his mother and Petitioner in trying to get Mr. Cardona and Jose to leave. After Alfredo was not successful in convincing Mr. Cardona, he left, but said he would be back. Mr. Cardona then advised Jose to stay with a friend until things quieted down. As Jose was leaving, Petitioner told him he would not be surprised to see Mr. Cardona on the 8 o'clock news. After Jose left, Mr. Cardona also left to visit two neighbors. He told them he had an argument with Petitioner's family, that they were giving him a bad time, and that Alfredo went to get his "buddies."

Later in the day witnesses heard gunshots. A next-door neighbor went to investigate and found Mr. Cardona moaning on the ground in the alley behind the property where Petitioner lived. Shortly thereafter, Mr. Cardona died from three shotgun wounds. He had also suffered two stab wounds and abrasions.

The only person who saw the murder was Jose Martinez, who was four or five houses down the alley. After he heard a shot, he saw a man standing near a van, pointing a shotgun at another man. The van was parked immediately behind Petitioner's back yard with its passenger side facing a gate leading from the yard to the alley. The shooter reloaded the gun and shot again twice. When Mr. Martinez looked, the victim was on the ground. The shooter then went to the driver's side of the van and the victim tried to get up and move. At that time a second

---

[1] Because Mr. Cardona and his son share the same last name, fist name is used to identify his son with clarity. No disrespect is intended.

[2] Petitioner and his brother share the same last name. For clarity, fist name is used to identify Petitioner's brother. Again, no disrespect is intended.

assailant came from the passenger side of the van and punched and kicked the victim. Although Mr. Martinez did not see it, it was later determined that the second assailant had stabbed the victim. The shooter then called to the second assailant to get into the van and they drove off.

Mr. Martinez could not positively identify the shooter or the second assailant, and gave only very general descriptions. He "was able to describe the shooter as a Mexican man about five feet, eight inches to five feet, ten inches tall, 180 to 200 pounds in weight with a stocky build, bald or with very short hair, 'rough shaven,' and wearing black pants and a brown flannel shirt. The second assailant was also a Mexican man, again five feet, eight inches to five feet, ten inches tall but lighter in weight, 160 to 180 pounds, clean shaven, with short hair, wearing a white shirt and dark pants with lighter skin and hair a little longer than the shooter's. [¶] When shown [Petitioner's] picture . . . taken at the time of his arrest . . . , [Mr.] Martinez stated [Petitioner] looked similar to the second assailant with regard to his facial characteristics, skin color, height and weight." *Pina*, 2008 WL 755067 at *2.

Alfredo was later found to be the shooter in the crime. Petitioner was convicted of second degree murder on the theory that he aided and abetted Alfredo as the second assailant who stabbed and kicked Mr. Cardona after Alfredo had shot him. *Pina*, 2008 WL 755067 at *5, 8. To prevail on this theory, the prosecution had to prove beyond a reasonable doubt that Petitioner was the second assailant.[3] He argues that the evidence was constitutionally insufficient because there was no physical evidence, weapons were not recovered, there were no fingerprints, DNA evidence or positive identification linking him to the crime, and the circumstantial evidence against him was weak.

In determining whether the state court determination involved an unreasonable application of clearly established federal law, the federal habeas court looks to the last reasoned opinion of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). Here it is the California Court of Appeal opinion on review of Petitioner's conviction. *Pina*, 2008 WL 755067.

---

[3] Other elements of the offense are not implicated by the Petition.

The state court, applying a legal standard equivalent to *Jackson*, reviewed the evidence presented at trial in the light most favorable to the prosecution. *See Pina*, 2008 WL 755067 at *3. The court analyzed the events of the morning, including that Petitioner actively participated in the argument, that Alfredo was called home from work to support Petitioner and his mother in their argument with Mr. Cardona, Petitioner's statement to Mr. Cardona's son not to be surprised if Mr. Cardona appeared on the 8 o'clock news, and Mr. Cardona's statement to a next-door neighbor after the argument that Alfredo went to get his "buddies." It based its conclusion in part on the strong evidence that Alfredo was the shooter. The evidence against Alfredo was that he left after the argument, but returned with a shot gun, and shot Mr. Cardona three times at close range. In his objections, Petitioner does not dispute that the evidence against Alfredo was strong. State court also analyzed the second assailant's participation in the murder, noting that Mr. Martinez did not testify that the second assailant came out of the van, but only from the passenger's side of the van, which was next to the gate to the back yard where Petitioner lived, that the second assailant did not appear until after the shooting, and that the cold-blooded nature of the second assailant's attack supported a reasonable inference that he was not the shooter's disinterested helper, but "someone caught up in the emotional context of the murder." *Id*. at *4. The court acknowledged that Mr. Martinez could not positively identify the second assailant, but said that Petitioner "looked similar" to the second assailant. *Id*. at *4. Based on the foregoing, the court concluded that the evidence was sufficient to convict Petitioner of second degree murder on the theory that he was the second assailant. *Id*. at *5.

In his objections Petitioner points to various pieces of evidence and argues as to each separately that it was insufficient to show guilt beyond a reasonable doubt. This approach is unavailing because the determination on sufficiency of the evidence is made based on review of all of the evidence admitted at trial. *See, e.g., McDaniel v. Brown*, __ U.S. __, 130 S.Ct. 665, 672, 675 (2010); *Schlup v. Delo*, 513 U.S. 298, 330 (1995). That "in all essential aspects" the evidence against Petitioner was circumstantial, *Pina*, 2008 WL 755067 at *10, was not fatal to the prosecution's case. Circumstantial evidence can be constitutionally sufficient to support a conviction. *Ngo v. Giurbino*, __ F.3d __ 2011 WL 2675808 at *2 (9th Cir. 2011); *United States*

*v. Cordova Barajas*, 360 F.3d 1037, 1041 (9th Cir. 2004 ("circumstantial evidence alone can be sufficient to demonstrate a defendant's guilt"). This is so even when circumstantial evidence can give rise to reasonable inferences to the contrary. *Payne v. Borg*, 982 F.2d 335, 341 (9th Cir. 1992).

Petitioner argues that the domestic argument on the morning of the murder was not violent, was common for the household, and therefore could not be used to support the conviction. This argument is unavailing because the state court assumed the argument was not violent. *See Pina*, 2008 WL 755067 at *1, 2, 3 & 4. It noted, however, that Petitioner was involved in an argument with the victim on the morning of the murder.

Petitioner also contests the credibility of the testimony he made the statement that it would not be surprising if Mr. Cardona appeared on the 8 o'clock news. Under *Jackson* the court must review the evidence "in the light most favorable to the prosecution." 443 U.S. at 319. This means that a reviewing court must presume that the jury resolved conflicts in the evidence and credibility issues in favor of the prosecution, even if this does not affirmatively appear in the record. *Id*. at 326; *see also McDaniel*, 130 S.Ct. at 673. Petitioner's argument is rejected because this court presumes, as it must, that the jury believed the testimony that Petitioner made the statement.

Moreover, the evidence is undisputed that someone said this to Jose just after the argument. (*See* Lodgment 2, Reporter's Transcript ("RT") at 846-47.) This, together with Mr. Cardona's instruction to Jose to visit a friend, and his comment to a neighbor that Alfredo went to get his "buddies," supports a reasonable inference that although the yelling ended, the animosity did not, and that there was an expectation by those involved in the argument that bad things could still happen that day.

Next Petitioner maintains that his consciousness of guilt cannot reasonably be inferred from the evidence that the police searched for him for three months after the murder. This argument is unavailing because the state court's sufficiency finding is not based on this, but relied on other evidence. *See Pina*, 2008 WL 755067 at *3-5.

In addition, Petitioner argues that any conclusion as to the identity of the second assailant

based on the cold-bloodedness of his attack was speculative. The court disagrees. The nature of the attack supports a reasonable inference that the murder was the ultimate and tragic result of the heated argument earlier in the day, and that the second assailant was not a disinterested person.

Last, Petitioner claims that the evidence was insufficient because the only witness to the crime could not positively identify him. He points to the Mr. Martinez' and Jose's conflicting testimony regarding Petitioner's appearance on the day of the murder. The state court acknowledged that Mr. Martinez did not positively identify Petitioner, and did not base its sufficiency determination only on witness identification but other evidence which tied Petitioner to the crime. Furthermore, as discussed above, the court must presume that after considering all the evidence, including the conflicting testimony regarding Petitioner's appearance, the jury resolved the conflict in favor of the prosecution. Petitioner's argument regarding his identification is therefore rejected.

On federal habeas review, the court "must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 562 U.S. __, 131 S.Ct. 770, 786 (2011). Authority to issue habeas relief is limited to cases where "there was no reasonable basis for the [state court] decision," *Cullen v. Pinholster*, __ U.S. __, 131 S.Ct.1388, 1402 (2011) (internal quotation marks and citation omitted), or "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." *Harrington*, 131 S. Ct. at 786. "Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, __ U.S. __, 130 S.Ct. 1855, 1862 (2010). "Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 131 S. Ct. at 786.

Based on the record, this court cannot conclude that there was no reasonable basis for the state court's sufficiency of the evidence finding or that all fairminded jurists would agree that the

state court's finding conflicted with *Jackson*.  When the totality of the evidence is viewed in the light most favorable to the prosecution, as required by *Jackson*, it was not unreasonable for the state court to conclude that the jury could find the prosecution proved its case beyond a reasonable doubt.  Petitioner's objections with respect to the insufficiency of the evidence claim are therefore overruled.

Petitioner next objects to the Report and Recommendation insofar as it found that the state court decision on the issue of jury instructions was not unreasonable under 28 U.S.C. Section 2254(d).  He argues that his constitutional rights were violated because the trial court improperly instructed the jury on the issues of aiding and abetting, proof beyond a reasonable doubt and circumstantial evidence.

The clearly established federal law pertaining to jury instructions is summarized in *Middleton v. McNeil*:

> In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement. Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.  The question is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process.  A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.  If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

541 U.S. 433, 437 (2004) (internal ellipsis, brackets, quotation marks and citations omitted).  If it is determined on federal habeas review that the trial court committed a constitutional error in instructing the jury, the petition can be granted only if the error was not harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  *Hedgpeth v. Pulido*, 555 U.S.57 (2008).  Specifically, when a jury is instructed on two theories of guilt, one of which is improper, harmless error analysis applies.  *Id*. 531-32.  However, no relief issues unless the petitioner can show that the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.; see also Brecht*, 507 U.S. at 637-38.

Petitioner first argues that the aiding and abetting instruction was erroneous.  In this regard, the trial court instructed the jury as follows:

> To prove that the defendant is guilty of a crime based on aiding and abetting that

>    crime, the People must prove that:
>
>    1. The perpetrator committed the crime;
>    2. The defendant knew that the perpetrator intended to commit the crime;
>    3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;
>
>    AND
>
>    4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.
>
>    Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.
>
>    If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor.
>
>    If you conclude that defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor.  However, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him or her an aider and abettor.

(Lodgment 1 at 106 (emphasis in original).)  This instruction was taken from Judicial Council of California, Criminal Jury Instruction 401 and was a correct statement of the law.  See *Pina*, 2008 WL 755067 at *7 and cases cited therein.  Petitioner does not contend otherwise.  He argues, however, that the portion of the instruction which states that the defendant need not be present when the crime was committed should have been left out because it was misleading and prejudicial in that it suggested under the circumstances of his case he could be found guilty even if he was not the second assailant.

The prosecution presented evidence only on the theory that Petitioner was the second assailant and argued in closing that he was the second assailant.  *Pina*, 2008 WL 755067 at *5, 7 & 8.  However, it also argued that Petitioner's words and actions were sufficient to convict him of aiding and abetting even if he was not the second assailant.  *Id*. at *6, 8.  The state court on appeal found that the evidence was insufficient to convict Petitioner on the latter theory.  *Id*. at *8.  The court also found that instructing the jury on the theory that Petitioner did not have to be

present when the crime was committed was error, but declined to reverse because the error was harmless. *Id*. at * 8-9. In making this determination, the court applied a legal standard equivalent to *Hedgpeth* and *Brecht*. *See id*. at *9.

In his objections Petitioner contends that the error was not harmless and argues that the jury was confused by the instructions. While it is true that the jury struggled with the aiding and abetting instructions, and sent the judge seven notes (*see* Lodgment 1 at 119-27), it is apparent from the notes that the jury was not confused about which theory of aiding and abetting to pursue. None of the notes concerned the issue of Petitioner's presence when the crime was committed. The notes suggest that the theory the jury was considering was whether Petitioner was the second assailant. (*See id.*) The state appellate court found the error was harmless. *Pina*, 2008 WL 755067 at *9. Because the record does not show the instructional error had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at 637-38, it was not unreasonable for state court to so find. Petitioner's objection with respect to the aiding and abetting instruction is therefore overruled.

Petitioner also argues in his objections that the trial judge's responses to the jury notes, which directed the jury back to the instructions, just reinforced the jurors' confusion. (*See* Lodgment 1 at 123; Lodgment 2, RT at 1961-64.) Because the jury notes do not indicate any confusion about the issue at hand, but only about other elements of aiding or abetting, Petitioner's argument is irrelevant. He does not contend that the aiding and abetting instruction were defective with respect to any aspect of aiding and abetting raised by the notes; accordingly, the judge's response directing the jury back to the instructions was appropriate and sufficient under the circumstances. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

Next, Petitioner maintains that the jury was not properly instructed on the prosecution's burden of proof beyond a reasonable doubt. In this regard, the jury was instructed as follows:

> The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial.
>
> A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove each element of a crime beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt.

> Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.
>
> In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty.

(Lodgment 1 at 84.) The instruction was taken from Judicial Council of California, Criminal Jury Instruction 222. Petitioner argues it was insufficient because the jury was not instructed that lack of evidence can lead to a reasonable doubt.

The Due Process Clause protects the accused against conviction except on proof beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970)

> The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. . . . [S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury.

*Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (internal quotation marks, brackets and citations omitted). The relevant inquiry on a challenge to a reasonable doubt instruction is "not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury did so apply it." *Id*. at 6, citing *Estelle v. McGuire*, 502 U.S. 62, 72 & n.4 (1991).

State court found that the instruction given in Petitioner's case complied with these requirements. *Pina*, 2008 WL 755067 at *12. Because this is apparent on the face of the instructions and because Petitioner has not pointed to anything in the record that the jury applied the instruction in an unconstitutional manner, the state court's application of *Winship* and *Victor* was not unreasonable. Accordingly, Petitioner's objection with respect to the reasonable doubt instructions is overruled.

Finally, Petitioner claims the jury was not properly instructed regarding consideration of circumstantial evidence. The trial court instructed the jury in this regard as follows:

> The People must prove not only that the defendant did the acts charged, but also

> that he acted with a particular intent or mental state. The instructions for each crime explain conduct, the intent or mental state required.
>
> Conduct, intent or mental state may be proved by circumstantial evidence.
>
> Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.
>
> Also, before you may rely on circumstantial evidence to conclude that the defendant had the required conduct, intent or mental state, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required conduct, intent or mental state. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions supports a finding that the defendant did have the required conduct, intent or mental state and another reasonable conclusion supports a finding that the defendant did not, you must conclude that the required conduct, intent or mental state was not proved by the circumstantial evidence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable.

(Lodgment 1 at 87.) As noted state court, this instruction was a result of the trial court's unnecessary and awkward combination of Judicial Council of California, Criminal Jury Instructions 224 and 225. *Pina*, 2008 WL 755067 at *9. Nevertheless, the instruction was a correct statement of the law. *Id*. at *10-11. Petitioner argued the instruction was misleading because it did not instruct the jury it was required to acquit him if the circumstantial evidence supported a reasonable conclusion that he was not the second assailant. The state court disagreed. *Id*. As is apparent on the face of the instruction, however awkwardly worded, the state court decision was not unreasonable.

In his objections, Petitioner contends that absent what he claims to be an instructional error, there was a high likelihood that the jury would have found in his favor. As stated above, state court was not unreasonable in concluding there was no instructional error. Furthermore, Petitioner points to nothing in the record to show that the jury misunderstood the instruction or was misapplied it. It is therefore presumed that it followed the instruction. *See Weeks*, 528 U.S. at 234. Petitioner also points to nothing in the record indicating that the jury was considering finding him not guilty. Accordingly, his argument is unsupported. Finally, he also contends the instruction lowered the prosecution's burden of proof. This argument is rejected because, as discussed above, the jury was separately and correctly instructed on the prosecution's burden of

proof beyond a reasonable doubt. Moreover, the burden is reiterated in the circumstantial evidence instruction. Petitioner's objections with respect to the circumstantial evidence instruction is therefore overruled.

Based on the foregoing, the Report and Recommendation is **ADOPTED** and the Petition is **DENIED**. Certificate of appealability is **DENIED**.

**IT IS SO ORDERED**.

DATED: August 17, 2011

M. James Lorenz
United States District Court Judge

COPY TO:

HON. LOUISA S. PORTER
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL